# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHELLE A. HAMMAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-13-175-RAW-SPS |

## REPORT AND RECOMMENDATION

The claimant Michelle A. Hamman requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the decision of the Commissioner should be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant is engaged in substantial gainful activity, or her impairment is not medically severe, disability benefits are denied. If she does have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant can perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on November 2, 1973, and was thirty-seven years old at the time of the administrative hearing (Tr. 27, 104). She attended special education classes and completed the ninth grade (Tr. 119). The claimant alleges that she had been unable to work since December 31, 2007, due to a drug-induced overdose/breakdown, and mental issues (Tr. 118).

**Procedural History**

The claimant applied for supplemental security insurance payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on September 30, 2010 (Tr. 12). Her application was denied. ALJ Osly F. Deramus conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated February 17, 2012 (Tr. 12-19). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found the claimant capable of work at all exertional levels but limited to: (i) performing simple tasks with routine supervision; (ii) relating to supervisors and peers on a superficial work basis; (iii) sustaining concentration and persistence sufficiently to complete tasks;

(iv) adapting to a work situation; and (v) not relating to the general public (Tr. 15). The ALJ found that although the claimant had no past relevant work, she was nevertheless not disabled because there was work that she could perform, *i. e.*, dishwasher, hand packer, bench assembler, motel housekeeper, and semi-conductor assembler (Tr. 18).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly analyze her credibility, (ii) by failing to properly assess her RFC, and (iii) by failing to fully develop the record. The undersigned Magistrate Judge finds that the ALJ did fail to properly analyze the claimant's RFC, and the decision of the Commissioner should therefore be reversed and the case remanded for further proceedings.

Treating notes from Carl Albert Community Mental Health Center indicate that they managed her medications. She at turns reported that her medication worked well (Tr. 195-196), and that she continued to suffer from auditory and visual hallucinations (Tr. 197-198, 226).

Consultative Examiner Denise LeGrand, Psy.D., conducted a psychological assessment of the claimant on November 9, 2011, administering the Wechsler Adult Intelligence Scale and the Wide-Range Achievement Tests, among others. The claimant attained a full scale IQ score of 69, a verbal comprehension score of 70, a perceptual reasoning score of 71, a working memory score of 71, and a processing speed score of 84 (Tr. 249-250). Dr. LeGrand indicated that Ms. Hamman's overall cognitive functioning is in the mentally retarded range, while most of her scores reflected a borderline

intellectual functioning (Tr. 250). She assessed the claimant with major depressive disorder with psychotic features, generalized anxiety disorder, and polysubstance abuse in remission by self-report, as well as borderline intellectual functioning and personality disorder, not otherwise specified (Tr. 250). She assessed the claimant a global assessment of functioning (GAF) score of 50. As to the claimant's prognosis, Dr. LeGrand indicated that she was not likely to change significantly in the next twelve months, and that the results of the exam appeared to be a valid estimate of her overall functioning (Tr. 250-251).

The claimant's mother completed a Third Party Function Report on November 17, 2010. She indicated that the claimant has memory concentration problems that made her moody and made it difficult for her to socialize with others (Tr. 142). She reported that her daughter needs reminders to take her medications, could prepare meals but often forgets what she is doing, and does not leave the house often due to paranoia (Tr. 144-145). As an example, she stated that her daughter had missed court dates due to memory problems, and that she has been fired from jobs because she cannot get along with people (Tr. 147-148).

In his written opinion, the ALJ found at step two that the claimant had the severe impairments of depression, anxiety, and polysubstance abuse (Tr. 14). At step three, the ALJ considered whether the claimant's mental impairment met Listing 12.04 and 12.09 and concluded that they did not, but did not address Listing 12.05C (Tr. 15). The ALJ also summarized the claimant's hearing testimony and other medical evidence. He noted

the results from the Wide Range Achievement Test and Dr. LeGrand's finding that the claimant had a full scale IQ score of 69; impression of major depressive disorder with psychotic features, generalized anxiety disorder, and polysubstance abuse in remission by self-report, as well as a GAF of 50 and personality disorder; and noted that the claimant's functioning appeared to be in the borderline range (Tr. 16-17). The ALJ did not, however, indicate the weight he assigned to Dr. LeGrand's report or otherwise analyze it in any detail. He summarized the opinions of the state agency psychologists who reviewed the record and assigned great weight to their opinions that the claimant had: (i) moderate limitation in activities of daily living and in maintaining social functioning; (ii) marked limitation in maintaining concentration, persistence, or pace; and (iii) one or two episodes of decompensation (Tr. 17). The ALJ mentioned the Third Party Function Report, but dismissed it because "a lay witness cannot determine whether observed behaviors are medically compelled, or whether they are merely a lifestyle choice on the part of the claimant" (Tr. 17). He found that the claimant's complaints of impairment were not credible, and concluded that she not disabled (Tr. 17).

The claimant argues that her RFC does not reflect the extent of her impairments because the ALJ disregarded probative evidence, particularly her borderline intellectual functioning. Because the ALJ did find that the claimant had the severe impairments of depression, anxiety, and polysubstance abuse, any failure to find additional impairments severe at step two is considered harmless error because the ALJ would nevertheless be required to consider the effect of these impairments and account for them in formulating

her RFC at step four. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004) and 20 C.F.R. § 404.1523. *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [citations omitted]. But here the error *was not* harmless, because the ALJ did not even mention the indication of borderline functioning at step two, and further failed to consider the "cumulative effect of claimant's impairments" at step four. *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004). *See also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a

wide range of sedentary work."). This omission is particularly important here because the ALJ did not consider Listing 12.05C at step three, despite seeming to approve Dr. LeGrand's assessment of borderline intellectual functioning as a true reflection of the claimant's capabilities.

The ALJ also failed to properly evaluate the Third Party Function Report. Social Security Ruling 06-03p (SSR 06-03p) provides the relevant guidelines for the ALJ to follow in evaluating "other source" opinions from non-medical sources who have not seen the claimant in their professional capacity. *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 (Aug. 9, 2006). SSR 06-03p states, in part, that other source opinions, such as those from spouses, parents, friends, and neighbors, should be evaluated by considering the following factors: (i) nature and extent of the relationship, (ii) whether the evidence is consistent with other evidence, and (iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *5-6. The ALJ mentioned the Third Party Function Report, but discounted it by observing that lay witness testimony is often dependent on the claimant's subjective complaints, and thereby wholly failed to evaluate it in accordance with the factors set out in SSR 06-03p.

Because the ALJ failed to properly analyze relevant evidence as to the claimant's limitations in determining her RFC at step four, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis of the evidence. If such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should then

re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 10th day of September, 2014.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**